IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MINISTER TIMOTHY LUTHER McNAIR, | Case No. 2:16-cv-00709-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| STATE OF OREGON, et al., | |
| Defendants. | |

**BECKERMAN, Magistrate Judge.**

Timothy Luther McNair ("Plaintiff"), an inmate in the custody of the Oregon Department of Corrections ("ODOC"), brings this civil rights action alleging violations of the Eighth Amendment's protection against cruel and unusual punishment, and Oregon state tort law. Defendants Kluger, Jordan, Nooth, Bell, Taylor, and Griener move for summary judgment on all claims. (ECF No. 67.) This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. For the reasons stated below, the Court grants Defendants' motion for summary judgment.

//

//

PAGE 1 – OPINION AND ORDER

## BACKGROUND

Plaintiff was admitted to ODOC custody on October 19, 2015. (Decl. of Dr. DiGiulio in Supp. of Defs. Mot. for Summ. J. ("DiGiulio Decl.") ¶ 3.) On October 20, 27, and November 5, 2015, Plaintiff attended "sick-call." (DiGiulio Decl., Exh. 1 at 15-16.) He reported pain in his left arm, neck, and back, and pain and numbness in his feet. ODOC transferred Plaintiff to Snake River Correctional Institution (SRCI) on November 18, 2015, and scheduled follow-up medical care to be provided there. (*Id.*)

Plaintiff attended sick-call at SCRI on November 25, 2015, complaining of dry feet. (DiGiulio Decl., Exh. 1 at 14.) Medical staff gave him Vaseline. (*Id.*) One month later, on December 28, Plaintiff returned to sick-call and complained of pain in his right heel and left foot. (DiGiulio Decl., Exh. 1 at 13.) On January 4, 2016, Plaintiff met with his medical provider, Dr. Hemphill, who approved x-rays and scheduled a follow-up visit. (DiGiulio Decl., Exh. 1 at 10; Sec. Am. Compl. ("SAC") at 4.)

The x-rays indicated minor spurring of both of Plaintiff's heels. (DiGiulio Decl., Exh. 1 at 17-18.) Heel spurs are calcium deposits on the heel bone that can cause pain, particularly when suffered in conjunction with plantar fasciitis, an inflammation of tissue in the foot. (DiGiulio Decl. ¶ 8.) "Treatments for heel spurs and associated symptoms include exercise, custom-made orthotics, anti-inflammatory medications, and cortisone injections." (*Id.*)

On February 23, 2016, Dr. Hemphill approved Plaintiff for a cortisone injection to treat the foot pain. (DiGiulio Decl., Exh. 1 at 9.) In March 2016, Dr. Hemphill ordered a low-bunk assignment in response to Plaintiff's reported difficulty and pain accessing a top bunk. (DiGiulio Decl., Exh. 1 at 8.)

Dr. Hemphill saw Plaintiff three additional times in March and April 2016. (DiGiulio Decl., Exh. 1 at 7.) On May 12, 2016, ODOC staff prescribed Plaintiff hydrocodone for pain.

PAGE 2 – OPINION AND ORDER

(DiGiulio Decl., Exh. 1 at 7.) Dr. Hemphill also submitted a request for orthotic gel heel inserts to the Therapeutic Level of Care Committee ("TLOC"), ODOC's medical oversight committee. (*Id.*)

On June 8, 2016, the TLOC approved Plaintiff for "in-debt" pay for the heel inserts. (DiGiulio Decl., Exh. 1 at 32.) Under this payment method, the institution advances the cost of the device to the inmate, and deducts the cost from the inmate's account when funds become available. (DiGiulio Decl. ¶ 22.) This ensures that inmates will not be denied a medical device due to indigence. (*Id.*) On June 13, 2016, Plaintiff was fitted for the heel cups and signed a release. (DiGiulio Decl., Exh. 1 at 12, 21.) ODOC debited his account on July 6, 2016. (*Id.*)

In June 2016, Dr. Hemphill prescribed Plaintiff a different pain medication, in response to reports that the hydrocodone was not helping. (DiGiulio Decl., Exh. 1 at 11.) Although Plaintiff communicated with medical staff in July 2016, he did not report foot pain. On August 3, 2016, Dr. Hemphill requested, and the TLOC approved, another pair of orthotic inserts. (DiGiulio Decl., Exh. 1 at 20.) This pair was approved for "self-pay," meaning that Plaintiff must pay for the devices before receiving them. (DiGiulio Decl. ¶ 28.) Plaintiff did not have enough funds in his account to pay the $39.00 cost. (DiGiulio Decl. ¶ 29.) He requested, and received approval for, "in-debt" pay. On October 26, 2016, Plaintiff was sized for the insoles, he received them on November 18, and the funds were debited from his account on November 30, 2016. (DiGiulio Decl., Exh. 1 at 22-25; DiGiulio Decl., Exh. 3.)

Plaintiff filed this action against ODOC medical personnel, claiming inadequate medical care relating to his foot pain. (*See* SAC.) Plaintiff alleges that Dr. Hemphill issued an order to provide Plaintiff with wider shoes than those issued upon his arrival at SRCI, and that Defendants ignored Dr. Hemphill's shoe order, aggravating his medical condition. (*Id.* at 4-5.)

Plaintiff further alleges, "[a]s a result of the decision by defendant(s) the [TLOC,] I was

"Denied" the gel heel cups [and the gel insoles] that were prescribed by Dr. Hemphill." (*Id.* at 5.)

Dr. Christopher DiGiulio, ODOC's Acting Medical Director for Health Services,

reviewed Plaintiff's medical records and "no record was found of approved medical orthotic

shoes during a search of the relevant time period." (DiGiulio Decl. ¶ 35.) Plaintiff does not

contest the authenticity or accuracy of the ODOC medical records provided by Defendants in

support of their motion for summary judgment. (*See* DiGiulio Decl., Exh. 1; *see also* Pl. Resp. to

Defs. Mot. Summ. J.)

I.      STANDARDS OF REVIEW

        A.      Summary Judgment

        Summary judgment is appropriate where there are no genuine issues of material fact and

the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). On a motion

for summary judgment, the court must view the facts in the light most favorable to the non-

moving party, and all reasonable inferences must be drawn in favor of that party. *Porter v. Cal.

Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citations omitted). The court does not assess

the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue

for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation

omitted).

        B.      Qualified Immunity

        Qualified immunity protects government officials from liability for civil damages

"insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The defense does not extend to claims for declaratory or injunctive relief. *Wood v. Strickland*, 420 U.S. 308, 314 n.6 (1975).

The first step in analyzing qualified immunity is to consider all materials submitted at summary judgment "in order to decide whether a constitutional right would be violated if all facts are viewed in favor of the party opposing summary judgment." *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001). "If no constitutional right would have been violated were the allegations established," the inquiry may end. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

## C.    Eighth Amendment

To establish a violation under the Eighth Amendment prohibition of cruel and unusual punishment based on prison medical treatment, a plaintiff must show "deliberate indifference to serious medical needs." 42 U.S.C. § 1983; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The test for deliberate indifference has two parts. First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). Second, "the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id.* The second prong can be satisfied by showing both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Id.* (citation omitted).

The deliberate indifference standard may be satisfied when "prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991) (citation omitted). Negligence, and even "civil-law recklessness," are insufficient. *Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994). "[I]nstead . . . a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless

PAGE 5 – OPINION AND ORDER

the official knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference." *Id.* at 837. A "plaintiff's showing of nothing

more than a difference of medical opinion as to the need to pursue one course of treatment over

the other" is "insufficient, as a matter of law, to establish deliberate indifference." *Jackson v.*

*McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

## II.     DISCUSSION

### A.     Eighth Amendment Claims

Plaintiff alleges that Defendants acted with deliberate indifference to Plaintiff's serious

medical needs, in violation of the Eighth Amendment, when they failed to (1) provide the shoes

ordered by Dr. Hemphill (claim three); (2) provide Dr. Hemphill's prescribed treatment for

Plaintiff's foot injuries causing wanton and unnecessary pain (claim six) and unreasonable risk

of serious damage to Plaintiff's future health (claim seven); and (3) "inquire into the essential

facts that were necessary to make a professional judgment regarding" the issues with, and

prescribed treatment for, Plaintiff's feet (claim eight).[1] (SAC at 6-8.) Plaintiff seeks declaratory

and injunctive relief, as well as damages, for the alleged constitutional violations. (SAC at 8-

12.)[2]

---

[1] The Court previously dismissed Plaintiff's First Amendment claims (claims one and
two). (*See* Order of Dismissal, ECF No. 19.)

[2] In each of his claims, Plaintiff identifies Defendants "acting under the color of state law,
while performing in their official capacity." (SAC at 6-8.) The Eleventh Amendment bars an
action for damages against a state official acting in her official capacity. *Kentucky v. Graham*,
473 U.S. 159, 160 (1985). The Court reads this pro se filing liberally, and construes the damages
claims to be against Defendants in their personal capacities, and the injunctive and declaratory
relief claims to be against Defendants in their official capacities. *See Hebbe v. Pliler*, 627 F.3d
338, 342 (9th Cir. 2010) (encouraging a liberal reading of pro se filings).

The undisputed facts do not support a finding that Defendants acted with deliberate indifference to Plaintiff's medical needs. Even accepting that Plaintiff's foot pain constitutes a "serious medical need" for Eighth Amendment purposes, Defendants provided adequate medical care. *See Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) ("[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain[.]") (quotation marks omitted).

Plaintiff complained of foot pain upon his arrival in ODOC custody in October 2015. (DiGiulio Decl., Exh. 1 at 15-16.) He transferred to his designated institution one month later, and complained to medical staff about foot dryness, but not pain. (DiGiulio Decl., Exh. 1 at 14.) When he did complain again about foot pain, Dr. Hemphill ordered x-rays and diagnosed Plaintiff's heel spurs within weeks. (DiGiulio Decl., Exh. 1 at 17-18.) Over the next six months, Plaintiff received a cortisone injection, pain medication, bunk accommodations, and two different types of gel shoe inserts to treat his heel pain. (DiGiulio Decl., Exh. 1 at 7-20.) According to Medical Director Dr. DiGiulio's expert opinion, this treatment accords with community standards. (DiGiulio Decl. ¶ 6.) Plaintiff offers no evidence to the contrary.

Plaintiff alleges that Defendants ignored Dr. Hemphill's request for wider shoes. However, the record contains no evidence that Dr. Hemphill communicated a shoe recommendation to Defendants, or that wider shoes were medically necessary to treat Defendant's condition. Rather, according to the medical records, Plaintiff was fitted for, and received, two kinds of orthotic inserts for his ODOC-issued shoes. *See Farmer*, 511 U.S. at 37 (holding that a defendant must knowingly disregard an excessive risk to inmate health to violate the Eighth Amendment.) In a similar vein, although Plaintiff asks this Court to issue an injunction ordering ODOC to perform an MRI, Plaintiff provides no evidence that such a

procedure is medically necessary. *See Swanson v. Coos Cty.*, Civ. No. 08-6312-AA, 2009 WL 5149265, at \*5 (D. Or. Dec. 22, 2009) (granting the defendants' motion for summary judgment on the plaintiff's medical malpractice claim where the defendant physician submitted expert testimony that the plaintiff's care was consistent with the accepted standard of care in the community and the plaintiff did not respond with any rebutting evidence).

Based on this record, there is no factual basis to support a finding that Defendants acted with deliberate indifference to Plaintiff's medical needs. [3] Plaintiff cannot satisfy the second prong of the deliberate indifference standard, and therefore the Court dismisses claims three, six, seven, and eight.

### B.      Tort Claims

A court with original subject matter jurisdiction may exercise supplemental jurisdiction over related claims, to the extent that such claims form part of the same case or controversy under Article III. 28 U.S.C. § 1367. When a district court dismisses all claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over any remaining state claims. Indeed, "the values of judicial economy, convenience, fairness, and comity" generally weigh in favor of dismissal in such circumstances. *Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966).

Given that the Court has dismissed all of Plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. The parties have engaged in minimal discovery and litigation, creating no significant loss of judicial economy. (*See, e.g.*, Pl. First Settlement Offer ("I have no need for any 'Discovery' this case will stand on

---

[3] As Plaintiff has not established a violation of his constitutional rights, Defendants are also entitled to qualified immunity on Plaintiff's Eighth Amendment damage claims. *See Saucier*, 533 U.S. at 201.

its own merit.")) The remaining factors weigh in favor of allowing Plaintiff to pursue his state law claims in state court. Accordingly, the Court dismisses claims four and six without prejudice to refile in state court.

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motion for summary judgment (ECF No. 67), DISMISSES Plaintiff's Eighth Amendment claims with prejudice, and DISMISSES his state law claims without prejudice to refile in state court. The Court denies as moot Plaintiff's motion to proceed to trial. (ECF No. 70.)

DATED this 14th day of May, 2018.

_Stacie F. Beckerman_
STACIE F. BECKERMAN
United States Magistrate Judge